D. Maimon Kirschenbaum
JOSEPH KIRSCHENBAUM LLP
32 Broadway, Suite 601
New York, NY 10004
(212) 688-5640
(212) 688-2548 (fax)

*Attorneys for Named Plaintiffs, proposed FLSA*
*Collective Plaintiffs, and proposed Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------x

**JOSE LUIS TOXQUI, on behalf of himself**
**and others similarly situated,**

                **Plaintiffs,**

      **v.**

**THE JADE FARM LLC d/b/a JUE LAN**
**CLUB, NAOMI RAM, MOHAMMAD ALI**
**AMANOLLAHI, and ANYA ARGWELLO**

              **Defendants.**
-------------------------------------------------------x

**CASE NO.**

**COMPLAINT**

**FLSA COLLECTIVE ACTION AND**
**RULE 23 CLASS ACTION**

**JURY TRIAL DEMANDED**

Plaintiff alleges as follows:

**INTRODUCTION**

1.     The Jue Lan Club (the "Club") is a high-end restaurant with an all-star list of regular

customers that come to party.  The Club is extremely accommodating to these high-end patrons,

which include NBA players such as Carmelo Anthony and James Harden and Hip Hop stars like

Sean "Diddy" Combs and Nas. Apart from its reputation for high end party services, the Jue Lan

Club is a hot bed of abusive, violent, and racist behavior.

2.     Specifically, the owner and manager of the club, Defendant Naomi Ram ("Ram"),

violently harasses and demeans her employees based on their race.

3.      On August 18, 2022, Defendant Ram ordered Plaintiff, a Mexican employee who worked as a bar back and who speaks little to no English, into the back office at the Club and proceeded to physically assault him – punching him in the face and chest – and to verbally harass, demean, and humiliate him.

4.      Specifically, Defendant Ram screamed into Plaintiff's face: "you little fucking Mexican [] illegal pieces of shit like you shouldn't fuck with people who fucking have money and fucking who know fucking shit."

5.      After screaming at Plaintiff, during which she physically assaulted him, for over twenty minutes, she fired Plaintiff and had the police escort Plaintiff out of the Club.

6.      As a result, Defendant Ram has caused Plaintiff to suffer severe emotional distress and significant psychological harm.

7.      In addition, Defendants regularly stole service employees' wages by (a) paying service employees below the minimum wage without appropriate notice of the tip credit, (b) not paying service employees the overtime wages they were owed, (c) not paying the required spread of hours premium, (d) not paying service employees for every hour they worked, and (e) requiring service employees to share tips with management and other non-service employees.

## JURISDICTION AND VENUE

8.      This Court has original federal question jurisdiction under 28 U.S.C. § 1331 because this case is brought under 42 U.S.C. § 1981 ("Section 1981"), and the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"). This Court has supplemental jurisdiction over the New York state law claims, as they are so related to the claims in this action within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

9.     Venue is proper in this District because Defendants conduct business in this District, and the acts and/or omissions giving rise to the claims herein alleged took place in this District.

## THE PARTIES

10.     Defendant The Jade Farm LLC is a corporation organized and existing under the laws of the State of New York that owns and operates the restaurant the Jue Lan Club (the "Club") which is located in Manhattan.

11.     The Club has an annual gross volume of sales in excess of $500,000.

12.     The Club is directly engaged in interstate commerce. For example, upon information and belief, numerous items sold at the Club on a daily basis are produced outside of the State of New York.

13.     Defendants Naomi Ram and Mohammad Ali Amanollahi are owners and operators of the Club.

14.     Defendants Naomi Ram and Mohammad Ali Amanollahi are both regularly present in the Club, where they actively supervise employees. They both have and exercise the authority to hire and fire employees.  Defendant Ram also controls employee schedules at the Club. On August 18, 2022, Defendant Ram fired Plaintiff.

15.     Defendant Amanollahi is the principal listed on the Club's liquor license.  He is regularly present at the restaurant and supervises the Club's day to day affairs.

16.     Defendant Anya Argwello is a manager at the Club and participated in the discriminatory harassment and termination of Plaintiff.

17.     Defendant Anya Argwello had the authority to oversee employees' work at the Club, set employee schedules, and had the authority to discipline employees.

18.     Plaintiff Jose Luis Toxqui ("Plaintiff") was employed by Defendants at the Club as a bar back from 2017 to July 2020, and as a bartender from July 2020 to August 18, 2020.

## FLSA COLLECTIVE ACTION ALLEGATIONS

19.     Plaintiff brings the First and Second Claims for Relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all service employees, other than service managers, employed by Defendants at the Club on or after the date that is three years before the filing of the Original Complaint in this case as defined herein ("FLSA Collective Plaintiffs").

20.     At all relevant times, Plaintiff and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subject to Defendants' decision, policy, plan and common policies, programs, practices, procedures, protocols, routines, and rules willfully failing and refusing to pay the legally required overtime wage for all hours worked over forty (40) hours in a workweek, and willfully misappropriating their tips. The claims of Plaintiff stated herein are essentially the same as those of the other FLSA Collective Plaintiffs.

21.     The First and Second Claims for Relief are properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. § 216(b).  The FLSA Collective Plaintiffs are readily ascertainable. For purpose of notice and other purposes related to this action, their names and addresses are readily available from the Defendants.  Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS – NEW YORK

22.     Plaintiff brings the Third, Fourth, Fifth, Sixth, and Seventh Claims for Relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all service

employees, other than service managers, employed by Defendants at the Club on or after the date that is six years before the filing of this Complaint (the "Class Period").

23.     All said persons, including Plaintiff, are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are determinable from Defendants' records. The hours assigned and worked, the positions held, and the rates of pay for each Class member are also determinable from Defendants' records. For the purpose of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under said F.R.C.P. 23.

24.     The proposed Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the court. Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within the sole control of Defendants, upon information and belief, there are more than forty (40) members of the Class.

25.     Plaintiff's claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief which would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay all minimum and overtime wages owed, misappropriating tips, failing to pay the spread of hours premium, and failing to provide Class members with required wage notices and wage statements. Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiff and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

26.    Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

27.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against Defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because the losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

28.     Upon information and belief, Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment.  Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

29.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual Class members, including:

a)  Whether Defendants employed Plaintiff and the Class members within the meaning of the New York law.

b)  At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay Plaintiff and the Class members for their work.

c)  The policies, practices, programs, procedures, protocols and plans of Defendants regarding the work and labor for which Defendants did not pay the Plaintiff and the Class members at all.

d)  Whether Defendants paid Plaintiffs and the Class members the appropriate minimum wage for all hours worked.

e)  Whether Defendants paid Plaintiffs and the Class members the appropriate overtime wage for all overtime hours worked.

f)  Whether Defendants paid Plaintiffs and the Class members the spread of hours premium for all shifts worked that lasted over 10 hours as required by the New York Labor Law.

g) Whether Defendants gave Plaintiffs and the Class members the wage notices and wage statements required by New York Labor Law § 195 and the New York Hospitality Wage Order.

h) Whether Defendants illegally retained portions of Plaintiff's and the Class Members' tips.

## FACTS

## Wage and Hour Claims

30.     Plaintiff's consent to sue form is attached hereto as Exhibit A.

31.     Plaintiff worked at the Club as a bar back from 2017 to July 2020, and as a bartender from July 2020 to August 18, 2020.

32.     Defendants paid Plaintiff the New York's food service worker tip credit rate, which is lower than the regular New York minimum wage, throughout his entire employment with them.

33.     Defendants were not entitled to utilize the tip credit set forth under the New York Labor Law, because they did not give Plaintiff the appropriate notice of the tip credit, including but not limited to the notices required by N.Y. Lab. Law § 195 and 12 NYCRR § 146-2.2.

34.     Defendants did not properly inform Plaintiff of the nature of the full minimum wage and applicable tip credit.

35.     Defendants did not give Plaintiff proper notice of the tip credit, as required by NYLL § 195 and 12 NYCRR §§ 146-1.3, 146-2.2.

36.     Plaintiff often and regularly worked more than 40 hours per week.

37.     Plaintiff's regular schedule from 2017 through April 2020 was as follows. Plaintiff worked five days a week. On Wednesday through Saturday, Plaintiff worked from 4pm to closing

(apprx. 1am/2am). On Sundays, Plaintiff worked 10am to 11pm. Thus, Plaintiff routinely worked 52 hours per week, but was rarely, if ever, paid overtime.

38.     After covid-19 hit New York City, Plaintiff's regular schedule from June 2020 through August 2022 was as follows. Plaintiff worked five days a week. On Wednesday, Thursdays, and Saturdays, Plaintiff worked 4pm to closing (apprx. 1am/2am). On Friday and Sundays, Plaintiff worked 10am to closing (apprx. 1am/2am). Thus, during this period, Plaintiff routinely worked 60 hours per week, but was rarely, if ever, paid overtime.

39.     Defendants did not pay Plaintiff for all of the overtime hours he worked.

40.     In addition, because Plaintiff was paid the wrong regular rate due to a misapplication of the tip credit, he was also paid the wrong overtime rate when he worked overtime.

41.     By way of example, in the pay period from December 31, 2018 through January 6, 2019, Plaintiff's pay stub reflects that he worked 3 hours of overtime (Plaintiff claims he worked more). Defendants paid Plaintiff $16.00 per hour for each of these overtime hours. This is unlawful because Plaintiff should have been paid $22.50 per hour for each of these overtime hours.

42.     Plaintiff worked overtime hours for which he was not lawfully compensated.

43.     Defendants never paid Plaintiff the spread of hours premium on days where he worked over 10 hours at the Club.

44.     Further Plaintiff's paystubs did not include the tip credit that Defendants were purportedly applying to his minimum wage or Plaintiff's correct hours worked, as required by NYLL § 195.

45.     During Plaintiff's employment, Defendants required service employees to share tips with an employee whose sole job duty was polishing silver and who did not provide direct customer service.  This individual's name is MD.

46.     Defendants also required service employees to share tips with managerial employees.  For example, Defendants required service employees to share tips with a manager named Ike, who had managerial authority over the service employees.

47.     Defendants committed the foregoing acts willfully and against Plaintiff, the FLSA Collective Plaintiffs, and the Class Members.

## Discrimination Claims

48.     Plaintiff is a of Mexican national origin and is ethnically Mexican.

49.     On or about December 18, 2022, Defendant Ram brought Plaintiff into the back office at the Club whereby Defendant Ram and Defendant Argwello proceeded to berate, humiliate, and yell ethnic slurs at, Plaintiff for an extended period of time.

50.     During this meeting, Defendant Ram yelled in Plaintiff's face, telling him: "you little fucking Mexican [] illegal pieces of shit like you shouldn't fuck with people who fucking have money and fucking who know fucking shit."

51.     Defendant Ram repeatedly called Plaintiff a "mother fucker" who "fucked with the wrong person."

52.     Defendant repeatedly falsely accused Plaintiff's wife, a former employee of Jue Lan, of stealing recipes and giving them to her new employer Sei Less.  In reality, Defendant Ram simply could not bear to see Plaintiff's wife, who is also ethnically Mexican, succeed at a competing location.

53.     During this meeting, Defendant Ram hit and punched Plaintiff in the face and chest.

54.    In between her bouts of physical violence, Defendant Ram yelled into Plaintiff's face: "Don't fuck with me, mother fucker."

55.    Plaintiff did not respond to these significant provocations. When confronted with this outrageous, disrespectful, and harmful behavior, he emotionally shut down. He was stunned, an in shock.

56.    During this meeting, Defendant Argwello participated in the harassment and humiliation of Plaintiff, saying demeaning, threatening, and abusive things to Plaintiff.

57.    Eventually, after twenty minutes of verbal and physical harassment, Defendants Ram and Argwello fired Plaintiff.

58.    Throughout the meeting, Defendants Ram and Argwello threatened to call the police and immigration services on Plaintiff. Eventually, Defendants Ram and ant Argwello did call the police, who arrived on the scene and escorted Plaintiff out of the Club, telling him that he was not welcome there anymore.

59.    Defendants Ram and Argwello harassed, humiliated, and berated Plaintiff because he is Mexican.

60.    Defendants Ram and Argwello intentionally created a hostile work environment for Plaintiff – forcing him to endure psychic, emotional, and physical abuse – before terminating his employment because of his race.

61.    Defendants Ram and Argwello fired Plaintiff because he is a Mexican person.

62.    As a result, Plaintiff suffered severe emotional and psychic distress.

63.    Defendants Ram and Argwello's conduct was cruel, despicable, and beyond the bounds of decent behavior in a humane and functioning society. It is also discriminatory and illegal.

### FIRST CLAIM FOR RELIEF
**FLSA Overtime Violations, 29 U.S.C. § 207**
**Brought by Plaintiff on Behalf of Himself and the FLSA Collective**
**Plaintiffs**

64.     Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

65.     At all relevant times, Defendants have been, and continue to be, "employers" engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of FLSA, 29 U.S.C. § 203.   At all relevant times, Defendants have employed, "employee[s]," including Plaintiff and each of the FLSA Collective Plaintiffs.

66.     Throughout the statute of limitations period covered by these claims, Plaintiff and the other FLSA Collective Plaintiffs worked in excess of forty (40) hours per workweek.

67.     At all relevant times, Defendants operated under a decision, policy and plan, and under common policies, programs, practices, procedures, protocols, routines and rules of willfully failing and refusing to pay the Plaintiff and the FLSA Collective Plaintiffs at one-and-one-half times their regular rate for work in excess of forty (40) hours per workweek, and willfully failing to keep records required by the FLSA even though Plaintiff and the FLSA Collective Plaintiffs have been and are entitled to overtime.

68.     Plaintiff, on behalf of himself and the FLSA Collective Plaintiffs, seeks damages in the amount of his unpaid overtime compensation, liquidated (double) damages as provided by the FLSA for overtime violations, attorneys' fees and costs, pre- and post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

### SECOND CLAIM FOR RELIEF
**FLSA Illegal Deductions from Gratuities, 29 U.S.C. § 201, *et seq.***
**Brought by Plaintiff on Behalf of Himself and the FLSA Collective**
**Plaintiffs**

69.     Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

70.     At all relevant times, Defendants have been, and continue to be, "employers" engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of FLSA, 29 U.S.C. § 203.   At all relevant times, Defendants have employed, "employee[s]," including Plaintiff and each of the FLSA Collective Plaintiffs.

71.     Throughout the statute of limitations period covered by these claims, Defendants knowingly failed to distribute gratuities to Plaintiff and the FLSA Collective Plaintiffs.

72.     Plaintiff, on behalf of himself and the FLSA Collective Plaintiffs, seeks damages in the amount of his unpaid gratuities, liquidated (double) damages as provided by the FLSA, attorneys' fees and costs, pre- and post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

## THIRD CLAIM FOR RELIEF
### New York Minimum Wage Violations, New York Labor Law § 650 *et seq.*
### Brought by Plaintiff on Behalf of Himself and the Class
### Members

73.     Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

74.     Defendants knowingly paid Plaintiff and members of the Class less than the New York minimum wage as set forth in N.Y. Lab. Law § 652 and supporting regulations of the New York State Department of Labor.

75.     Defendants did not pay Plaintiff and members of the Class the New York minimum wage for all hours worked.

76.     Defendants' failure to pay Plaintiff and members of the Class the minimum wage was willful within the meaning of N.Y. Lab. Law § 663.

77.     As a result of Defendants' willful and unlawful conduct, Plaintiff and members of the Class are entitled to an award of damages, including liquidated damages, in an amount to be determined at trial, pre- and post-judgment interest, costs and attorneys' fees, as provided by N.Y. Lab. Law § 663.

## FOURTH CLAIM FOR RELIEF
**New York Overtime Violations**
**New York Minimum Wage Act, N.Y. Stat. § 650 *et seq.*,**
**N.Y. Comp. Codes R. & Regs. Tit. 12, § 146-1.4**
**Brought by Plaintiff on Behalf of Himself and the Class**
**Members**

78.     Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

79.     It is unlawful under New York law for an employer to suffer or permit a non-exempt employee to work without paying overtime wages for all hours worked in excess of forty (40) hours in any workweek.

80.     Throughout the Class period, Defendants willfully, regularly, and repeatedly failed to pay Plaintiffs and the Class members at the required overtime rate of one-and-one-half times the greater of the minimum wage or their regular rate for hours worked in excess of forty (40) hours per workweek.

81.     As a result of Defendants' willful and unlawful conduct, Plaintiff and members of the Class are entitled to an award of damages, including liquidated damages, in an amount to be determined at trial, pre- and post-judgment interest, costs and attorneys' fees, as provided by N.Y. Lab. Law § 663.

## FIFTH CLAIM FOR RELIEF
**New York Notice Requirements, N.Y. Lab. L. §§ 195, 198**
**Brought by Plaintiff on Behalf of Himself and the Class**
**members**

82.     Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

83.     Defendants did not provide Plaintiff and the members of the Class with the wage notices/wage statements required by N.Y. Lab. Law § 195.

84.     As a result of Defendants' unlawful conduct, Plaintiff and members of the Class are entitled to an award of damages pursuant to N.Y. Lab. Law § 198, in amount to be determined at trial, pre- and post-judgment interest, and costs and attorneys' fees, as provided by N.Y. Lab. Law § 198.

### SIXTH CLAIM FOR RELIEF
**Illegal Deductions from Gratuities, N.Y. Lab. L. §196-d**
**Brought by Plaintiff on Behalf of Himself and the Class**
**Members**

85.     Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

86.     Defendants illegally misappropriated Plaintiff's and the Class members' tips and required them to share tips with tip-ineligible managers and non-service employees.

87.     As a result of Defendants' willful and unlawful conduct, Plaintiff and members of the Class are entitled to an award of damages, including liquidated damages, in an amount to be determined at trial, pre- and post-judgment interest, and costs and attorneys' fees, as provided by N.Y. Lab. L. § 198.

### SEVENTH CLAIM FOR RELIEF
**New York Spread of Hours Provisions**
**N.Y. Comp. Code R. & Regs. tit. 12, § 146-1.6**
**Brought by Plaintiff on Behalf of Himself and the Class Members**

88.     Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

89.     Plaintiff and the Class Members had workdays that lasted more than ten (10) hours.

90.     Defendants willfully and intentionally failed to compensate Plaintiff and the Class Members one hour's pay at the basic New York minimum hourly wage rate when their workdays lasted more than ten (10) hours, as required by New York law.

91.     As a result of Defendants' willful and unlawful conduct, Plaintiff and members of the Class are entitled to an award of damages, including compensatory damages, and liquidated damages, in an amount to be determined at trial, pre- and post-judgment interest, and costs and attorneys' fees, as provided by N.Y. Lab. L. § 198.

**EIGHTH CLAIM FOR RELIEF**
**Race/National Origin Discrimination, Section 1981**
**42 U.S.C. § 1981 *et seq.***
**Brought by Plaintiff on behalf of Himself**

92.     Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

93.     In violation of Section 1981, Defendants discriminated against Plaintiff on the basis of his Mexican ethnicity and national origin.

94.     Defendants created a hostile work environment against Plaintiff on the basis of his Mexican ethnicity and national origin.

95.     Defendants terminated Plaintiff's employment because of his Mexican ethnicity and national origin.

96.     As a direct and proximate consequence of Defendants' discrimination against Plaintiff, Plaintiff suffered, and continues to suffer, substantial non-monetary damages, including, but not limited to, emotional distress, physical pain and suffering, damage to Plaintiff's good name and reputations, lasting embarrassment, humiliation and anguish.

97.     As a result of Defendants' unlawful conduct, Plaintiff is entitled to compensatory damages, including but not limited to damages for emotional distress, punitive damages, post-judgment interest, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

**NINTH CLAIM FOR RELIEF**
**Race/National Origin Discrimination, New York City Human Rights Law**
**N.Y. Admin. L. §§ 8-101 *et seq.***
**Brought by Plaintiff on behalf of Himself**

98.     Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

99.     In violation of the NYCHRL, Defendants discriminated against Plaintiff on the basis of his Mexican ethnicity and national origin.

100.     Defendants created a hostile work environment against Plaintiff on the basis of his Mexican ethnicity and national origin.

101.     Defendants terminated Plaintiff's employment because of his Mexican ethnicity and national origin.

102.     As a direct and proximate consequence of Defendants' discrimination against Plaintiff, Plaintiff suffered, and continues to suffer, substantial non-monetary damages, including, but not limited to, emotional distress, physical pain and suffering, damage to Plaintiff's good name and reputations, lasting embarrassment, humiliation and anguish.

103.     As a result of Defendants' unlawful conduct, Plaintiff is entitled to compensatory damages, including but not limited to damages for emotional distress, punitive damages, post-judgment interest, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

## TENTH CLAIM FOR RELIEF
**Common Law Battery**
**Brought by Plaintiff on behalf of Himself against Defendant Ram**

104.        Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

105.        On or about August 18, 2022, Defendant Ram unlawfully punched and hit Plaintiff in the face and body.

106.        Defendant Ram's actions were willful, intentional, and designed to physically hurt and intimidate Plaintiff.

107.    As a direct and proximate consequence of Defendant Ram's actions towards Plaintiff, Plaintiff suffered, and continues to suffer, substantial non-monetary damages, including, but not limited to, emotional distress, physical pain and suffering, damage to Plaintiff's good name and reputations, lasting embarrassment, humiliation and anguish.

108.    As a result of Defendants' unlawful conduct, Plaintiff is entitled to compensatory damages, including but not limited to damages for emotional distress, punitive damages, post-judgment interest, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

## ELEVENTH CLAIM FOR RELIEF
**Common Law Assault**
**Brought by Plaintiff on behalf of Himself against Defendant Ram**

109.        Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

110.        On or about August 18, 2022, Defendant Ram yelled at, threatened, and demeaned Plaintiff, before punching Plaintiff in the face and body.

111.     Defendant Ram intentionally and willfully caused Plaintiff to be afraid that he would be the victim of harmful and offensive bodily contact.

112.     Defendant Ram's actions constituted an unwarranted threat of violence against Plaintiff that was made with the intention of Plaintiff feeling afraid for his physical safety.

113.     As a direct and proximate consequence of Defendant Ram's actions towards Plaintiff, Plaintiff suffered, and continues to suffer, substantial non-monetary damages, including, but not limited to, emotional distress, physical pain and suffering, damage to Plaintiff's good name and reputations, lasting embarrassment, humiliation and anguish.

114.     As a result of Defendants' unlawful conduct, Plaintiff is entitled to compensatory damages, including but not limited to damages for emotional distress, punitive damages, post-judgment interest, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the FLSA Collective Plaintiffs and members of the Class, pray for relief as follows:

A.     An award of damages, according to proof, including but not limited to compensatory damages, emotional distress damages, back pay, liquidated damages, and punitive damages, to be paid by Defendants;

B.     Designation of this action as a collective action on behalf of the FLSA Collective Plaintiffs and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and

NYLL claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b);

C. Designation of Plaintiff as Representative of the FLSA Collective Plaintiffs;

D. Designation of this action as a class action pursuant to F.R.C.P. 23;

E. Designation of Plaintiff as Representative of the Class;

F. Penalties available under applicable laws;

G. Costs of action incurred herein, including expert fees;

H. Attorneys' fees, including fees pursuant to 29 U.S.C. § 216, N.Y. Lab. L. § 663, and other applicable statutes;

I. Pre-judgment and post-judgment interest, as provided by law; and

J. Such other and further legal and equitable relief as this Court deems necessary, just and proper.


Dated:  New York, New York
    September 15, 2022

Respectfully submitted,

JOSEPH & KIRSCHENBAUM LLP


By: /s/ D. Maimon Kirschenbaum
   D. Maimon Kirschenbaum
   Michael DiGiulio
   32 Broadway, Suite 601
   New York, NY 10004
   Tel: (212) 688-5640
   Fax: (212) 688-2548

*Attorneys for Named Plaintiff, proposed FLSA Collective Plaintiffs, and proposed Class*

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all causes of action and claims with respect to which he has a right to jury trial.